IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1856, IN THE FORTIETH YEAR
OF THE STATE.

---

### NELSON *v.* HARDY and Others.

The refusal of an instruction which is pertinent, is not error, if the Court has given it substantially in another instruction.

A promise by *A.* to *B.*, with the consent of *C.*, that if *B.* will extend the time of payment of a debt due by *C.* to *B.*, and also furnish goods to *C.* on credit, he, *A.*, will retain money coming to *C.*, and pay *B.* the debt, and also for the goods, is valid and binding, though not in writing.

If the promise be merely by *A.* to *C.* thus to pay *B.*, the latter may maintain an action against *A.* on the promise.

*Monday,*
*May 26, 1856.*

APPEAL from the *Carroll* Circuit Court.

DAVISON, J.—*Thomas, Hugh, John* and *William Hardy,* the plaintiffs below, instituted this suit against *Erastus Aikin, Stephen Gooding,* and *Francis Nelson,* partners, &c., under the name of *Aikin, Gooding & Co.,* who were the defendants. The facts stated in the complaint are these:

May Term,
1856.

NELSON
v.
HARDY.

The defendants were sub-contractors under a firm named *Boody, Ross & Co.*, for the construction of that part of the *Lake Erie, Wabash and St. Louis Railroad* lying between *Logansport* and *Delphi;* and on the 18th of *November*, 1853, one *William B. Givens* was, and previous thereto had been, a sub-contractor under the defendants for the clearing, grubbing and grading of a portion of said road, and had then done a quantity of work under his sub-contract. *Givens*, on said 18th day of *November*, was indebted to the plaintiffs 104 dollars for beef, and, on that day, in consideration that the plaintiffs would allow *Givens* further time for payment of the 104 dollars, and continue to furnish beef to *Givens* up until the 1st of *January*, 1854, the defendants, with his consent, promised, 1. That they would retain 104 dollars out of his, *Givens's, December* estimate, and pay the same over to the plaintiffs; 2. That they would pay the plaintiffs for all the beef they should furnish *Givens* between the said 18th of *November* and 1st of *January*. It is alleged that the plaintiffs, between those dates, furnished him beef to the amount of 177 dollars, and gave time on the 104 dollars until *December*, as agreed; that on the 16th of *December*, 1853, the .defendants received an estimate on *Givens's* work of 700 dollars, out of which, with his consent, they retained in their hands the 104 dollars, to be by them paid to the plaintiffs; and that between the above dates, *Givens* did work on his sub-contract for the defendants to the amount of 1,000 dollars. Further, it is averred that *Givens* never paid the 104 dollars; but there is no averment that he had not paid the 177 dollars. The plaintiffs demand a judgment for 400 dollars.

There was a return of "not found" as to *Aikin* and *Gooding*. *Nelson* appeared and answered. His answer contains eight paragraphs. The first, second, third and seventh are, substantially, denials of the indebtedness charged in the complaint. The fourth and fifth allege that as to the several sums of money sued for in this action, or either of them, there was no promise, contract, memorandum, or note thereof, in writing, signed by the

May Term,
1856.

NELSON
v.
HARDY.

said *Nelson* or by any person thereunto by him lawfully authorized. The sixth and eighth paragraphs make no point in the case. To the fourth and fifth there was a demurrer sustained. The cause was then submitted to a jury, who found for the plaintiffs 281 dollars. New trial refused, and judgment, &c.

During the trial, the plaintiffs offered to prove the undertakings set forth in the complaint, by parol evidence, which, over the defendant's objection, was admitted.

The record does not profess to contain all the evidence, but it shows that the following was introduced by the plaintiffs.

"*Aikin, Gooding & Co.*: Please pay the bearer, *Thomas Hardy*, 104 dollars, and charge to my account. *December* 14, 1853. *W. B. Givens.*"

"*Aikin, Gooding & Co.*: Please pay the bearer, *Wm. Hardy*, 164 dollars, on the 15th of *January* next (1854.) *December* 14, 1853. *W. B. Givens.*"

These orders, it appeared, were given on settlement between the plaintiffs and *Givens* for the same beef mentioned in the complaint. There was also evidence tending to prove that the plaintiffs, after the alleged promises, had given credit to *Givens*, and not to the defendants, for the beef.

The undertakings relied on in support of the action, were not shown to be in writing.

At the proper time the defendants moved the Court to charge the jury as follows: " The plaintiffs can not recover on the promise stated in the complaint, unless credit was given to the defendants and not to *Givens*. If the plaintiffs, after the alleged promise (if such proof was made) still continued to make these charges to *Givens*, and settled the amount with him, and took his orders in payment for the same, they can not recover." This instruction was refused; and though it was evidently a proper direction for the jury, its refusal is not available on error, because, at the instance of the defendant, the Court subsequently charged that—"if the jury find that the plaintiffs sold beef to *Givens*, and gave him the credit, which may be proved

May Term,
1856.

NELSON
v.
HARDY.

by the orders of *Givens* and the admissions of the plaintiffs, then the promise by the defendants to pay the debt of *Givens*, must be in writing, or it is void and not binding." This is, in substance, the same as the refused instruction; and we have decided that the refusal to give an instruction which is pertinent, will not authorize the reversal of a judgment, where the Court has virtually given it in other instructions. *Taber* v. *Hutson*, 5 Ind. R. 322.

Is the undertaking stated in the complaint a promise within the statute of frauds? This is the first question to be considered. That statute enacts that no action shall be brought to charge any person upon any special promise to answer for the debt, default or miscarriage of another, unless such promise, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged. 1 R. S., p. 299. If the alleged undertaking is a promise by the defendants to answer for the debt or default of *Givens*, within the meaning of the above enactment, then the fourth and fifth paragraphs of the answer shouldhave been held sufficient, because the demurrer admitted that the promise was not in writing.

As to the item of 104 dollars, it is argued that the complaint sets it forth as an existing debt when the promise was made; that the promise could not possibly enter into the consideration of that part of the debt, and is, therefore, clearly within the statute. This reasoning does not strictly apply to the case. True, the item in question was at the date of the promise an existing debt; but what says the complaint? With the consent of *Givens*, the defendants agreed to retain that sum out of his *December* estimate, and with his consent, the money was so retained. By leaving the 104 dollars with the defendants, he paid his debt to the plaintiffs. After that sum was retained out of his *December* estimate, pursuant to the contract made on the 18th of *November*, the debt from him to them no longer existed. The defendants' promise was not, therefore, to answer for the debt or default of *Givens*, because the retaining of the money extinguished his debt,

and made them alone liable to the plaintiffs for the amount retained. This, in our opinion, is the proper construction of the contract stated in the complaint. It follows that the defendants' promise was not within the statute.

Suppose, however, the debt of *Givens* was not extinguished; still the complaint sufficiently shows that he suffered the money to remain in the defendants' hands, to be retained by them, under a promise to him that they would pay it over to the plaintiffs. Was such promise valid without being reduced to writing? In *Farley* v. *Cleveland*, 4 Cowen 432, one *Moon* sold and delivered to the defendant *Cleveland* a quantity of hay worth 150 dollars, in consideration of which, *Cleveland* promised, by parol, to pay *Moon's* debt to *Farley*. The plaintiff was nonsuited in the Common Pleas, but on error the judgment was reversed, the Supreme Court holding that *Farley* was entitled to recover. 9 Cowen 639. So in *Barker* v. *Bucklin*, 2 Denio 45, it was decided that an action may be maintained on a parol promise made by the defendant to a third person, for the benefit of the plaintiff, without any consideration moving from the plaintiff. Accordingly, where *B.*, being indebted to the plaintiff, sold property to the defendant, who agreed to pay the price of it to the plaintiff on account of his demand against *B.*, *held*, that the plaintiff might maintain an action against the defendant on his agreement; such not being a promise to answer for the debt of a third person, and, therefore, not required to be in writing. In these cases, the original debt was not extinguished, because the plaintiff, though the promise was made for his benefit, was unconnected with the transaction. The principle indicated by the above authorities, applies to the point under consideration. The 700 dollar estimate belonged to *Givens*. Out of it he allowed the defendants to retain 104 dollars, which they agreed, not only with him, but with the plaintiffs, to pay over in discharge of his debt.

As to the item of account which accrued after the 18th of *November*, the case is with the plaintiffs. The complaint avers that the defendants originally undertook to

pay it; and though there was some evidence tending to prove that the plaintiffs continued to give credit to *Givens*, we are not allowed to indulge that conclusion. Under the charge of the Court, the inquiry as to whom the credit was given, was fairly before the jury. That was a question of fact for their consideration alone. And all the evidence not being on the record, we must presume, in favor of the verdict, that the credit was given to the defendants.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages and costs.

*L. B. Sims, H. P. Biddle* and *B. W. Peters*, for the appellant.

*H. Allen, D. D. Pratt* and *S. C. Taber*, for the appellees.